# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

BERNARD COUTU,                          )
                                        )
    Plaintiff,                         )
                                        )   NO. 3:17-cv-01492
v.                                      )
                                        )   JUDGE CAMPBELL
BRIDGESTONE AMERICAS, INC.              )   MAGISTRATE JUDGE NEWBERN
and BRIDGESTONE AMERICAS                )
TIRE OPERATIONS, LLC,                   )
                                        )
    Defendants.                        )

## MEMORANDUM

Pending before the Court are cross motions for summary judgment. Plaintiff filed a Motion for Summary Judgment on Counts I and III. (Doc. No. 34.) Defendants Bridgestone Americas, Inc. and Bridgestone Americas Tire Operations, LLC (collectively "Bridgestone") filed a response (Doc. No. 42), and Plaintiff filed a reply (Doc. No. 47). Defendants filed a Motion for Summary Judgment (Doc. No. 35). Plaintiff responded to Defendants' motion (Doc. No. 44), and Defendants filed a reply (Doc. No. 48). For the reasons discussed below, Plaintiff's motion is **DENIED**, and Defendants' motion is **GRANTED** in part, and **DENIED** in part.

### I. Background

Plaintiff Bernard Coutu began working for Firestone, which later merged into Bridgestone, on January 3, 1977. (Doc. No. 45 at ¶ 1.) He worked at Bridgestone's Joliette, Quebec Tire Plant from 1977 until 2005. In early 2005, Plaintiff became aware of a job opportunity to work for Bridgestone/Firestone North American Tire, LLC (an entity that later became Bridgestone Americas, Inc.) in Nashville, Tennessee.

Plaintiff was provided a written job offer stating: "You will be eligible to participate in all company benefit programs applicable to your position level in accordance with their respective plan terms." (Doc. No. 45, ¶ 5.) Before Plaintiff accepted the position in Nashville, he inquired about the retirement benefits. (Coutu, Dep., Doc. No. 39-1 at 30-31). Danielle Roberge, a manager in the Nashville division, and Rene Barbieri, a Bridgestone human resources representative in Nashville, told Plaintiff he would receive credit in the United States for his time worked in Canada. (*Id.*)

Over the years, Bridgestone has sponsored various retirement plans. (Doc. No. 45, ¶ 6.) When Plaintiff began working in Nashville, new employees were eligible to participate in a pension plan called the Cash Balance Plan – officially titled Supplement A-3 to the Salaried Employees Retirement Plan. The Cash Balance Plan replaced the previous plan, Supplement A-1, which Bridgestone closed to new participants on July 1, 2003. (*Id.*) Both plans are referred to as Qualified Salaried Employees Retirement Plan. (Compl., ¶ 24.)

When Plaintiff began working in Nashville on July 1, 2005, he was provided a copy of the the A-3 Supplement and possibly the A-1 Supplement.[1] (Doc. No. 43, ¶ 4; Coutu Dep., Doc. No. 43-1 at 58.)

The A-3 Supplement provides the following plan information:

> All employees of the Employer who are classified by the Employer as United States salaried employees for Plan participation purposes … and who are hired or rehired on or after July 1, 2003, are eligible to participate in the Plan. These employees are referred to as "Covered Employees."
>
> …
> Employees who on or after July 1, 2003 initially became classified as United States salaried employees of an Employer … by reasons of transfer of

---

[1] Bridgestone disputes Coutu's allegation that a human resources representative gave him Supplement A-1 concurrently with Supplement A-3. (Doc. No. 43, ¶ 4.)

2

> employment or change in job classification will also become Covered Employees.
>
> …
>
> Credited Service is used to determine the amount of your benefit. Credited Service is determined in the same manner as your Years of Service, but only includes those period[s] of time that you are a Covered Employee and a Plan Participant. (Supplement A-3, Summary Plan Description, Doc. No. 39-1 at 34-36.)

Between 2005 and 2013, Bridgestone provided employees an online pension calculator to estimate pension benefits. (Doc. No. 43, ¶ 8.) In January 2008, after working in Nashville for approximately two years, Plaintiff attempted to run a pension estimate to calculate a benefit under the Supplement A-1 plan (Doc. No. 39-1.) The online calculator stated, "Your Plan" is the "Qualified Salaried Employees Retirement Plan," and showed his "ERISA service" date as July 1, 2005, and an estimated pension benefit of $0.00. (Compl., Doc. No. 27, ¶ 34.)

Believing this information to be incorrect, Plaintiff contacted human resources by email: "Recently I was trying to use the Pension Calculator {without success} and I was told I was not eligible for that type of Pension plan. Can you look at what is wrong in the system?" (Doc. No. 39-1 at 90-91.) Cheryl Jandecka, a representative of the Bridgestone America's Holding, Inc. Pension Administration, responded that he was a participant in the Cash Balance Plan, but not the Pension Plan. (Doc. No. 39-1 at 90-91.) Plaintiff then pursued the matter with Bill Phillips, Executive Director IR & Benefits. Phillips responded:

> I reviewed the e mail and investigated your offer letter. It states, "you will be eligible to participate in all company benefit programs applicable to your position level in accordance with their respective plan terms." The plan terms for the BSAH Salaried Supplement A-3 [the Cash Balance Plan] are for people hired on or after July 1, 2003. Since you were not an employee of BFNT and your hired date was July 1, 2005 you are in the correct plan. The details and summary plan description can be found at the Team BSA web site. The pension plans are legal documents and the determination of who is covered by the plan is extremely clear. I discussed this with Fran Jones and Rene Barbieri to insure [sic] I reviewed the correct documents. I am sure this

3

is not the answer you wanted to hear but Jandecka determination is correct and you are an eligible participant in the proper BSAH pension plan Supplement A-3 Cash Balance. (*Id*. at 88.)

In 2010, Plaintiff contacted Robert McClaugherty for information about his pension benefits. McClaugherty gave Plaintiff an estimate of his current pension benefit, but did not provide him with a formal statement. (Doc. 43, ¶ 11.)

In early 2013, the online tool showed that Plaintiff was a participant in the "Qualified Salaried Employees Retirement Plan" and had an estimated monthly accrued benefit at age 65 of $0.00. (Doc. No. 43, ¶ 9.) Believing this to be an error, Plaintiff contacted Bridgestone about his "Cash Balance Account Balance." Bernard Kmetz, Manager, Pension and Savings Plans, responded:

> As we previously discussed regarding your MyHR ticket, the Salary Cash Balance Plan account balance is posted annually to TeamBSA in December following plan year end. Your account balance was not posted due to system errors. Those errors have been corrected, but since TeamBSA is an annual posting, it will not appear there until December of this year for plan year end 10/31/2013. We anticipate some improvements to this process that you will like but too early to go into detail at this time. In order to assist you with your account balance, please be advised your 10/31/2012 account balance is estimated to be $15,593.23. I hope you had a chance to review the Summary Plan Description that explains the percentage of earnings used to calculate the credits. We apologize for the inconvenience but hope we have satisfied your needs. I understand you may disagree with the calculation, but I am providing your estimated account balance here. (Doc. No. 39-1, 97.)

In June 2016, Plaintiff received a written benefit statement for his Personalized Cash Balance Account, which showed his entitlement to a monthly benefit of $217 using his transfer date of July 2005. (Doc. No. 43, ¶ 13.) This was the first written benefit statement Plaintiff had received from Bridgestone, other than the online calculator estimates, since the transfer. (*Id*.)

4

In May or June 2017, Plaintiff decided to retire from Bridgestone. He received a "retirement packet" that included a Benefit Overview listing his Credited Service date as 1/3/1977, his last hire date as 1/3/1977, and his ERISA date as 7/1/2005. (Doc. No. 43, ¶ 14.) Plaintiff completed the retirement packet and elected to receive a lump sum payment of $40,771.70. (Doc. No. 45, ¶ 15.) Plaintiff also had available to him the retirement benefits accrued between 1977 and 2005 under two different Canadian retirement plans. (Doc. No. 45, ¶¶ 3, 15; Doc. No. 39-1 at 92-95.)

On November 27, 2017, Plaintiff submitted an administrative claim with Bridgestone for benefits in addition to those he had accrued under the Cash Balance Plan and filed this case, asserting breach of fiduciary duty, breach of contract, and promissory estoppel. Bridgestone administratively denied his claim and denied his appeal. (Doc. No. 45, ¶ 19.) On March 29, 2019, Plaintiff moved for summary judgment on his claims for breach of fiduciary duty and wrongful termination of benefits. (Doc. No. 34). Defendant moved for summary judgment on all claims. (Doc. No. 35.)

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

In ruling on a motion for summary judgment, "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). In determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely only upon those portions of the verified pleadings, depositions, and answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. Analysis

**A. Statute of Limitations**

    1. <u>Wrongful Denial of Benefits</u>

Plaintiff brings a claim for benefits under § 502(a)(1)(B), asserting entitlement to benefits pursuant to the Supplement A-1 plan and his original date of hire – January 3, 1977. (Pl. Br., Doc. No. 36 at 11.) Defendants argue that Plaintiff has known since at least 2008 that he was not eligible

for benefits under Supplement A-1 and his claim is, therefore, barred by the six-year statute of limitations.

The relevant provision of Section 502(a)(1)(B) provides:

> A civil action may be brought … by a participant … to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan … 29 U.S.C. § 1132(a)(1)(B).

ERISA does not provide a statute of limitations for claims under Section 502(a)(1)(B). The Courts applies the statute of limitations applicable to breach of contract claims, which, in Tennessee, is six years. *Meade v. Pension Appeals & Review Committee*, 966 F.3d 190, 194-95 (6th Cir. 1992); T.C.A. § 28-3-109. "The rule governing when a cause of action accrues is the 'clear repudiation' rule." *Morrison v. Marsh & McLennan Cos., Inc.*, 439 F.3d 295, 302 (6th Cir. 2006). "[A]n ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed when there has been a clear repudiation by the fiduciary which is clear and made known to the beneficiary." *Id.* (quoting *Bennett v. Federated Mutual Ins. Co.*, 141 F.3d 837, 839 (8th Cir. 1998)). *See Patterson v. Chrysler Group, LLC*, 845 F.3d 756, 764 (6th Cir. 2017) ("Plaintiff's claim began to run when she was put on notice (formal or informal) that the benefits she sought would be denied to her," consequently the first repudiation of benefits, not the second (thirteen years later) was the date on which the statute of limitations began to run.).

The question is whether Bridgestone clearly repudiated Plaintiff's claim for benefits more than six years before he filed this case. Defendants assert they clearly informed Plaintiff he was not entitled to retirement benefits under the Supplement A-1 plan, through an email sent to Plaintiff from Bill Phillips, Executive Director IR and Benefits, on February 6, 2008. Plaintiff disputes

Phillips was able to make a fiduciary representation and that the email was a "clear and unequivocal repudiation."

The Court first considers whether the email was a repudiation by a "fiduciary." ERISA defines a fiduciary as a person with "any discretionary authority or discretionary control respecting management" of the plan, or "has any discretionary authority or discretionary responsibility in the administration" of the plan. 29 U.S.C. § 1002(21)(A). The Sixth Circuit employs a functional test to determine fiduciary status, viewing "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan. *See Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006) (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). "Fiduciary status ... is not an all or nothing concept"; a person can be a fiduciary with respect to a particular activity. *Id.* (citing *Moench v. Robertson,* 62 F.3d 553, 561 (3d Cir.1995)).

Plaintiff does not dispute that Bridgestone and Phillips were plan fiduciaries. Indeed, Plaintiff sued Bridgestone for breach of fiduciary duty related to its plan representations, and characterized Phillips as "a Plan fiduciary during the relevant period." (*See* Am. Cmpl., Doc. No. 27, ¶¶ 66-81; Pl. Br., Doc. No. 44 at 10.) *See also*, *Deschamps v. Bridgestone Americas, Inc.*, 169 F. Supp. 3d 735, 748 (aff'd 840 F.3d 267 (6th Cir. 2016)) (Bridgestone acted as a plan fiduciary when Bridgestone employees communicated information regarding pension eligibility and benefits; individual employees were merely speaking on Bridgestone's behalf). Phillips was Executive Director of IR and Benefits and a member of the Benefits Appeals Board with discretionary authority. (Doc. No. 45, ¶ 13.) Both Bridgestone and Phillips were fiduciaries of the plan when communicating benefits eligibility to Plaintiff.

Plaintiff's argument that Phillips' email did not constitute a "clear and unequivocal repudiation of benefits" is without merit. In response to a series of messages from Plaintiff about

his enrollment in the Cash Balance Plan (Supplement A-3) instead of the traditional pension plan (Supplement A-1), Phillips wrote: "I am sure this is not the answer you wanted to hear but Jandecka [Pension Administration] determination is correct and you are an eligible participant in the proper BSAH pension plan Supplement A-3 Cash Balance." Phillips' email in 2008 should have unequivocally disabused him of any belief he was entitled to benefits under Supplement A-1. Plaintiff was aware, at least by February 2008, that Bridgestone did not consider him eligible for the Supplement A-1 traditional pension plan.[2] His claim accrued at that time.

Plaintiff filed this case on November 27, 2017, more than six years after his claims accrued. Accordingly, Plaintiff's claim for benefits under ERISA Section 502(a)(1)(B) is barred by the statute of limitations.

2. Breach of fiduciary duty under ERISA § 502(a)(3)

ERISA contains a statute of limitations applicable to actions for breach of fiduciary duty:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation. 29 U.S.C. § 1113.

---

[2] Plaintiff's assertion that the online statements indicated he was enrolled in the traditional pension plan is not supported by the evidence. The online statement showed Plaintiff enrolled in the "Qualified Salaried Employees Retirement Plan." (Doc. No. 36-4 at 218.) The traditional pension plan and the cash balance plan shared the same title. (Compl., Doc. No. 27, ¶24.) Any question about which plan Plaintiff was enrolled in was answered unequivocally by Phillips' email.

9

A claim for breach of fiduciary duty under ERISA "accrues when the claimant has knowledge of the facts constituting the breach." *Ternes v. Tern-Fam, Inc*., No. 89-1648, 1990 WL 80915, *4 (6th Cir. June 14, 1990). "[T]o trigger the ERISA statute of limitations, the plaintiff need only have knowledge of the act and cannot wait until the consequences of the act become painful." *Id*. "The basic ERISA limitations period of six years begins on the date of the breach or violation. However, a 'plaintiff with actual knowledge' of a non-fraudulent breach of ERISA fiduciary duties must file suit within three years." *Wright v. Heyne*, 349 F.3d 321, 327 (6th Cir. 2003) (citing *Tassinare v. American Nat'l Ins. Co*., 32 F.3d 220, 223 (6th Cir. 1994)). "[T]he relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003). In *Wright*, the court concluded the three-year limitations period applied when the "extrinsic facts of which the Plaintiffs had actual knowledge demonstrate that Plaintiffs must have known that they had been wronged." *Id*. at 331.

Plaintiff alleges Defendants breached their fiduciary duty to "communicate with and inform Mr. Coutu." (Def. Br., Doc. No. 44 at 6.) Plaintiff cites several examples of allegedly inaccurate or incomplete information regarding his pension benefits, all of which were known to be inaccurate or incomplete at the time. In fact, on multiple occasions, in 2008, 2013, and 2016, he inquired about the information provided because he thought it was wrong. (*See* Doc. No. 45 at ¶¶ 13, 14; Doc. No. 43 at ¶¶ 11, 12.) Plaintiff also stated that he knew the information provided in the online benefits calculator was inaccurate because it consistently showed a balance of $0.00. (Doc. No. 43, ¶ 9.)

The Court finds that Plaintiff had actual knowledge of the alleged breaches of fiduciary duty at the time they occurred. The applicable limitations period for such claims is three years. Plaintiff filed this case on November 27, 2017. Accordingly, claims related to representations made more than three years before that date are time barred.

**B. Breach of Fiduciary Duty**

Plaintiff claims Bridgestone breached its fiduciary duty of loyalty "to communicate to the beneficiary material facts" about his retirement benefits when it provided "lackluster responses" to Plaintiff's questions about which pension plan he participated in and whether Bridgestone would honor his years of service at the Joliette plant. Plaintiff also complains that Bridgestone provided inaccurate calculations and dates in the online benefits calculator. Plaintiff cites communications in 2005 (pre-transfer), 2008 (Phillips email), conversations in 2010 and 2013 about errors in the online benefits portal, 2017 (retirement application), and 2018 (claim for benefits and appeal). (*See* Pl. Br., Doc. No. 36 at 16.) Plaintiff also asserts that Bridgestone breached its fiduciary duty to him when it failed to give him written benefits estimates that were produced for internal review in 2010 and 2013. (Pl. Br., Doc. No. 36 at 16.)

ERISA requires a "fiduciary [to] discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104. To prevail on a breach-of-fiduciary-duty claim under ERISA, a plaintiff must prove that the defendant not only breached its fiduciary duty but also caused harm by that breach. *Maynor v. Hartford Life Group Inc. Co.*, No. 2:07-cv-244, 2009 WL 2601866, at *5 (E.D. Tenn. Aug. 20, 2009) (citing *Kuper v. Iovenko,* 66 F.3d 1447, 1459 (6th Cir. 1995)).

A fiduciary breaches his duty by providing plan participants with materially misleading information, "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448 (6th Cir. 2002). To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, Plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to his detriment. *Id.* at 449. "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing [] benefits to which [he] may be entitled." *Id.* (quoting *Krohn v. Huron Mem. Hosp.,* 173 F.3d 542, 547 (6th Cir. 1999)).

Most of the allegations are related to conduct that occurred before November 2014, and are therefore outside the limitations period.[3] Within the statute of limitations, Plaintiff alleges three benefits summaries from Bridgestone in 2016 and 2017, that provided an inaccurate "vesting service" date and "benefit service" date.[4] (Pl. Br., Doc. No. 36 at 16; Yarmouth Dep., Doc. No. 36-4 at 76-77, 84-90.) The 2016 statement informed Plaintiff that he was entitled to a "meager

---

[3] The mistakes in the online calculations were not material misrepresentations. There is no evidence that Plaintiff was misled in any way. Nor is there any evidence that Plaintiff relied on the mistakes. To the contrary, Plaintiff believed the information was incorrect and questioned Bridgestone about them. (*See* Pl. Br., Doc. No. 36 at 16.) The material information, which was accurately communicated to Plaintiff, was that Plaintiff was enrolled in the Cash Balance Plan, he was not eligible for the Supplement A-1 plan, and his Cash Balance Plan was effective July 1, 2008, when he began working in the United States. Moreover, several courts have found that providing statements with an estimate of benefits is a not a fiduciary duty. *See Bloemker v. Laborers' Local 256 Pension Fund*, No. 1:07cv986, 2009 WL 10695752 (rev'd, in part, on other grounds, 605 F.3d 436 (6th Cir. 2010)) (collecting cases).

[4] Plaintiff has included as an exhibit the deposition of Yarmouth, in which he agrees that the statements contain the errors described, but Plaintiff has not included the erroneous statements as exhibits.

monthly benefit under the Cash Balance Plan." (Compl., Doc. No. 1, ¶ 39; Doc. No. 43, ¶ 13.) In 2017, the statement provided to Plaintiff indicated he was "entitled only to a benefit under the Cash Balance Plan based on his transfer date." (Compl., Doc. No. 1, ¶ 45; Doc. No. 45, ¶ 15; Doc. No. 43, ¶ 14.) These inaccuracies are not material misrepresentations. At no time did the information provided in 2016 or 2017 represent to Plaintiff that he was eligible for the Supplement A-1 plan. Moreover, Plaintiff does not assert detrimental reliance with regard to these representations which occurred shortly before his retirement.

Plaintiff also alleges that Bridgestone failed to provide him with a written statement of benefits, as required by 29 U.S.C. § 1025, until 2016. The parties did not brief the question of whether the statutory obligation to provided a written statement of benefits is also a fiduciary obligation. However, Plaintiff has not explained or provide any evidence of how the failure to provide such statements within the statute of limitations period, 2014 and 2015, is material or how Plaintiff was harmed. *Parkridge Med. Ctr., Inc. v. CPC Logistics, Inc*. Grp Benefit Plan, No: 1:12-cv-124, 2013 WL 3976621, *17 (E.D. Tenn., Aug. 2, 2013) (dismissing breach of fiduciary duty claim where there was no causal connection between the fiduciary's failure to provide requested information and the denial of benefits).

In sum, although Plaintiff has identified inaccurate information Bridgestone provided to him. Plaintiff has not shown that the inaccuracies made within the limitations period (after November 2014) were material or that Plaintiff detrimentally relied on them. Accordingly, Plaintiff's motion for summary judgment on this claim is **DENIED**, and Defendants' motion for summary judgment on this claim is **GRANTED**.

## C. Retaliation

Plaintiff asserts a claim under Section 510, alleging Bridgestone interfered with him attaining pension and health benefits in retaliation for filing this lawsuit and administrative claim. (Compl., Doc. No. 27. ¶¶ 84-88.) Specifically, Plaintiff claims that in retaliation for filing this lawsuit in November 2017, Bridgestone failed to notify the third-party administrator of his retirement, and, as a result, Plaintiff was unable to enroll in health insurance. (Compl., Doc. No. 27, ¶¶ 55-57.) Defendant argues that the retaliation claim should be dismissed because Plaintiff provides no evidence that his claim was treated differently than the claims of other retirees. (Pl. Br., Doc. No. 44 at 12-13.)

Section 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. 29 U.S.C. § 1044.

A prima facie case under Section 510 requires: (1) Prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled. *Petrus v. Lucent Technologies, Inc.*, 102 Fed. Appx. 969, 971 (6th Cir. 2004) To establish the "purpose of interfering" element, Plaintiff need not show that Bridgestone's sole purpose was to interfere with his entitlement to benefits, only that it was a "motivating factor." *Id*. (citing *Shahid v. Ford Motor Co.,* 76 F.3d 1404, 1411 (6th Cir.1996)). An employee can make out a prima facie case of ERISA discrimination by showing a close temporal proximity between the retaliatory action and the exercise of a right guaranteed by ERISA. *Id*.

Here Plaintiff alleges, and Bridgestone does not dispute, that Bridgestone did not notify the third-party administrator of his retirement, preventing him from enrolling in retiree health benefits. Plaintiff filed this case and an administrative claim for benefits on November 27, 2017 and retired just a few weeks later, effective January 1, 2018. The Court finds that the temporal proximity between Plaintiff's retirement and the filing of this lawsuit is sufficiently close to show Bridgestone's inaction may have been motivated by Plaintiff's filing his claims for benefits.

Accordingly, Plaintiff has stated a prima facie case of retaliation under Section 510 sufficient to withstand Defendant's motion for summary judgment on this claim. Defendants' motion for summary judgment on this claim is **DENIED**.

### D. Wrongful Denial of Benefits

Plaintiff's claim for wrongful denial of benefits stems not from the denial itself, but from the administrative procedure provided by Bridgestone. (*See* Pl. Br., Doc. No. 44 at 11 ("Mr. Coutu's denial of benefits claim is based on the procedural deficiencies of the administrative claim process.")) Plaintiff asserts that he was not provided a "reasonable opportunity for a full and fair review" because Bridgestone did not adjudicate his claim within the statutory time period and did not provide him with "requested plan documents that would allow him to understand its reasons for denying his claim." (Am. Compl., Doc. No. 27, ¶¶ 90-92.) Plaintiff does not suggest a remedy for the alleged wrongful denial of benefits; but appears to tie this claim together with the claim of breach of fiduciary duty and ultimately requests reformation of the plan agreement. (*See* Pl. Br., Doc. No. 44 ("Plaintiff's denial of benefits claim and breach of duty claim are interrelated, and reformation as a remedy for Count I [breach of fiduciary duty] will allow the Court to resolve Count III [wrongful denial of benefits] according to the reformed Pension Plan terms.")).

15

ERISA requires every employee benefit plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. A "full and fair review" must allow a plan's trustees to operate claims procedures without the formality or limitations of adversarial proceedings and protect a plan participant from arbitrary or unprincipled decision-making." *Weaver v. Phoenix Home Life Mut. Inc. Co.*, 990 F.2d 154, 157 (4th Cir. 1993).

When alleging that a full and fair review of a claim was not provided, a plaintiff must allege how such violation has prejudiced the presentation of his case. *Bartling v. Fruehauf*, 29 F.3d 1062, 1068 (6th Cir. 1994) (explaining that courts may consider whether a plaintiff has been prejudiced in determining whether penalties for such violations are warranted); *see also*, *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 883 (6th Cir. 2007) (the courts aim in granting relief under ERISA is to place plaintiff "in the position he ... would have occupied but for the defendant's wrongdoing.") Ultimately, plaintiff must be in a "worse position" because of a defendant's procedural violations than it would have been if defendant had complied with the regulations." *Bartling* at 1067.

The appropriate remedy for a procedural violation is not reformation of the benefits plan, but a return to the status quo by curing the procedural violation. *Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 883-84 (6th Cir. 2007) ("A plaintiff denied any benefits at all has no expectation of receiving them unless her claim is meritorious, and thus returning her to the status quo prior to the § 1133 violation requires only curing the procedural violation so that she may fairly pursue the merits of her claim."); *see also*, *Parkridge Med. Ctr., Inc. v. CPC Logistics, Inc. Grp. Benefit Plan*, No: 1:12-cv-124, 2013 WL 3976621, *17 (E.D. Tenn., Aug. 2, 2013) ("[R]elief for a violation of §1133 is equitable … at best Plaintiff would be entitled to a remand.")

Remand, however, is only required if it would serve some "useful purpose." Even if the administrator has failed to consider certain evidence, the Court should remand for administrative reconsideration only if the additional evidence might change the claim decision. *Kent v United of Omaha Life Inc. Co.,* 96 F.3d 803, 807 (6th Cir. 1996) (holding remand was unnecessary and represented a "useless formality" when the evidence did not show the fiduciary's decision was an abuse of discretion).

Plaintiff has not provided any evidence to show that the outcome of his administrative appeal would change if Plaintiff had access to the plan documents he claims were necessary, so he could better argue his case to the Benefits Appeals Board. The Benefit Appeal's Board had access to the plan language, and there is no evidence that it failed to consider it. Nor has Plaintiff, who currently has all of the documents he originally desired, showed that the decision of the Benefits Appeals Board was arbitrary and capricious. "A plan administrator's decision will not be deemed arbitrary and capricious so long as 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Haus v. Bechtel Jacobs Co., LLC*, 491 F.3d 557, 561-62 (6th Cir. 2007). *See also*, *Parkridge*, 2013 WL 3976621 at *18 ("[T]here is no causal connection between [defendant's] failure to provide the information and its denial of benefits.")

Plaintiff has not shown that remand to the Benefit Appeals Board would be more than a "useless formality." Accordingly, Defendant's motion for summary judgment on the claim of wrongful termination of benefits is **GRANTED**.

**E. Breach of Contract and Promissory Estoppel (State Law)**

Plaintiff asserts two claims under Tennessee state law: breach of contract (Count IV) and promissory estoppel (Count V). Plaintiff alleges that in consideration for his accepting employment in Nashville, Bridgestone promised Plaintiff would be given credit in the pension

plan back to his original hire date of January 3, 1977. Plaintiff claims Bridgestone breached this agreement in October 2017[5] when it determined he was entitled only to a pension benefit through the Cash Balance Plan. (Compl., Doc. No. 27, ¶¶ 99-105.) Defendant moved for summary judgment on these claims on the ground that they are preempted by ERISA. Plaintiff did not respond to Defendant's preemption argument.

ERISA preempts "any and all state laws insofar as they may now or hereafter related to any [ERISA-governed] employee benefit plan …" 29 U.S.C. § 1144. "The phrase 'related to' is given broad meaning such that a state law cause of action is preempted if 'it has connection with or reference to that plan." *Cromwell v. Equicor-Equitable HCA Corp*., 944 F.2d 1272, 1275 (6th Cir. 1991).

Congress' intent in enacting ERISA was to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern. *Id*. at 1276. Only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted. *Id*. The Sixth Circuit has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA. *Id*. (citing *Ruble v. UNUM Life Ins. Co.,* 913 F.2d 295 (6th Cir.1990); *Davis v. Kentucky Finance Cos. Retirement Plan,* 887 F.2d 689 (6th Cir.1989); *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426 (6th Cir.1989); *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987)). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id*.

---

[5] October 2017 is the date of the administrative claim decision. The Court determined that Bridgestone repudiated Plaintiff's claim to benefits under the A-1 Supplement in 2008.

Plaintiff's breach of contract and promissory estoppel claims clearly relate to his ERISA governed employee retirement plan and are preempted by ERISA as a matter of law. Defendants' motion for summary judgment on the breach of contract and promissory estoppel claims is **GRANTED**.

### IV. Conclusion

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. No. 35) is **GRANTED** as to the claims of breach of fiduciary duty (Count I), wrongful denial of benefits (Count III), breach of contract (Count IV), and promissory estoppel (Count V), and **DENIED** as to the claim for retaliation (Count II). Plaintiff's Motion for Summary Judgment on Counts I and III is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE